Good morning your honors, Todd Burns on behalf of Mr. Blow. I want to begin by focusing on the destruction of evidence issue which relates most directly to the second of the two counts in the indictment. That count charged a drug sale that occurred on April 16, 2010. Now an FBI surveillance report indicated that a man who the officers doing the surveillance believed was Mr. Blow. Mr. Blow was surveilled at four locations on the morning of April 16, 2010. One of those locations was 5151 Cobon Street. The final location was on Cervantes Street where the drug sale occurred. Mr. Blow said look that wasn't me at any of those locations and there was actually a video camera set up at one of them, the 5151 Cobon Street. We understand the background facts. So let's assume that you got the tape from the video surveillance and it showed that he wasn't the person surveilled at that other corner, not where the drug transaction took place. But what the government has is his voice on tape, several witnesses who identify him at the scene and I think they've arrested him at the scene. No they did not. But they've got a bunch of evidence he's at the scene. So how does it change the result if you can show that he wasn't at the other place at some point in time? It's not the scene of the crime, it's some other place. The surveillance indicates that they believe that this is him that they're surveilling the entire time. I understand but it's not just that they say they believe it's him at the scene. They have a recording. People say that's his voice. It's his voice exemplars. They compare it. There's people who say he was there. I saw him. This is the same guy who was in court. So what difference would it make if it turned out they were mistaken that they saw him at a different place at a different point in time? So this is the evidence they have from the scene. They have the informant who has a very checkered past. They have one officer who says that he was told that a white van was leaving the scene before the sale occurred. He followed that van away and he saw someone get out of that van from across the street and go into a liquor store and he made an in-court identification of Mr. Blow. The third thing they have are the audio recordings which some agents testify. Well I've listened to 911 recording of Mr. Blow. Well they also played them for the jury. They also played the audio recordings and the other recordings and the jury concluded and everybody argued that they seemed to be the same person. And that's why I've submitted those recordings to the court. I've lodged those with the court because the recordings are very short. There's very little on them. I think to make any sort of convincing voice comparison is a real leap and the court can listen to the recordings itself. They're very brief recordings. In the recordings this informant doesn't refer to the person as Danny or Dee such as was done on the January 2010 incident and they're so brief that to make a meaningful comparison is a real leap. Counter that with the fact that they say they're surveilling this guy all morning long and that he has gone to Coban Street and that he's gone to Cervantes but lo and behold the video of Coban shows it's not him. That's certainly enough to raise for the jury a reasonable doubt. But here we have the officer who says I watched the transaction. I watched somebody get into a van. He drives to a liquor store. I go to the liquor store and what happens at the liquor store? No the officer didn't say. What happened is an officer who was watching the house from a distance who could not identify Mr. Blow. But he says I see somebody get into a van. I've seen someone get into a van. The van's leaving. Another officer follows the van and believes that he sees Mr. Blow get out of that van and go into a liquor store. Apparently very brief he's passing by across the street. Very brief observation. The van then returns to the house. A different officer is again the one watching the house from very far away. Can't identify Mr. Blow even though by the way he was an officer that was involved in the previous surveillance. There's a little bit of dispute as to whether or not the two men get into this blue trailblazer or if they're standing outside the trailblazer. It seems as if the informant says they never got into the trailblazer. The officer who's watching from a block or more away seems to believe that they did get into the trailblazer. There's a quick transaction apparently allegedly and he leaves. So none of the officers alleged any sort of exchange that they saw any sort of exchange. The only person that alleges that he- the only officer that alleges- I thought Cruz and Harrison ID'd your client as the person responsible for distributing the cocaine on April 16th. Harrison did, yes. Cruz didn't? Well Cruz again is the officer who follows- I understand who Cruz is but I understood that both Cruz and Harrison ID'd him as the person responsible. What Cruz said is that- I mean when I read what Cruz said it seemed obviously Cruz was saying this is the guy responsible for distributing the cocaine and this isn't in January. This is in April 16th, 2010. Harrison said the same thing. And the informant says the same thing. But my worry about this is this. I mean we're arguing about this and your argument might be good to the D.J. What is our standard of review about what the D.J. did with this evidence? Well I think- What is the standard of review? Don't give me a well. What is it? There are two different prongs. Partly it's DeNovo. What is DeNovo? Did the district judge apply the correct test? Well the district judge applied Sevilla. I don't believe the district judge did. Do you think he was required to do what as a matter of law here? Everybody agrees. No evidence that this is anything but an inadvertent destruction. The district judge finds that and we're stuck with that. This is an inadvertent destruction of evidence. You can't show what was on it. You can only speculate about what was on it. Under those circumstances, how do we review the district judge's decision about whether or not to- what sanction to impose? Well first of all, I don't think everyone agrees that it was inadvertent. I know, but the district judge found that it was- The district judge found that there was no bad faith. Right, found that it was- And the government cited the district judge to Garcia, which is a case that for any remedy, including- Well but you still haven't answered my question. Assuming that we believe that there's no evidence that this was intentionally destroyed, how do we review the district judge's evaluation of what the speculative evidence would have shown? How do we review his determination of what to do? Well it's not really- it's not an issue of determining the district court's decision on that, because the district court's decision goes to whether or not there's bad faith and therefore- Well the district court finds- Therefore there should be dismissal. The district court finds that there's no bad faith. We agree with the district- I agree with the district judge for purposes of argument. Now- I just- Now what- no, let me finish, because you haven't answered the question. It's important. I didn't answer it for Judge Smith either. What do we do when the district judge finds there's no bad faith, and then looks at the situation and says, look, I don't know what the tape would have shown, but even if it showed that he wasn't there, it wouldn't have made a difference in the verdict. How do we review the district judge's determination? Under Sevilla, it's for the jury to decide, given an adverse inference instruction, if they believe that there was bad faith. Well, but just a minute. Under Sevilla, it says, courts must balance the quality of the government's conduct against the degree of prejudice to the accused, where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice. In my book, Sevilla says that's the DJ's job. DJ's got to make this determination. If the DJ says, well, I think you might have an argument, okay. Then the jury gets a chance to look at it. But in my book, that's exactly what Sevilla says. So is it your argument that the judge must give an adverse inference instruction under the law? That would be a legal error. Yes. Tell me what case you cite for that. And I cite Sevilla, and this is the reason for that. But Sevilla doesn't say that, does he? Sevilla says if there is negligence, that is enough on the government's conduct side of the balance. And here the government explicitly admitted in the district court, said the worst this is is negligence. So we've got negligence on that side of the balance. The other side of the balance is the evidence that was destroyed, can it be reasonably substituted or replaced by the defense? Here there's nothing that that evidence could be replaced by. So you're saying the judge made a legal error here because he should have instructed the jury to draw an adverse inference. Yes. And Sevilla says the judge must give an adverse inference instruction under these circumstances. Is that your position? Well, obviously the facts aren't exactly the same. Well, I'm trying to find a case that tells me that the judge judges it would be an abuse of discretion because Sevilla says the judge looks at a range of things. It would be an abuse of discretion not to give the adverse inference instruction. Sevilla says if there's government negligence, which there was here, and the evidence for the defense cannot be reasonably substituted or replaced, that an adverse inference instruction has to be given. And the evidence here is quite a bit stronger than the evidence that was destroyed in Sevilla. Sevilla was a car that was destroyed and so a mechanic couldn't look at the car and try and figure out how long it would take to build a compartment and remove the drugs. Here the evidence that's destroyed is evidence that Mr. Blow is indicating would show he wasn't even at the person surveilled that morning. So that's very important evidence. And, again, government has admitted negligence. So, again, it's not exactly the same facts as Sevilla, but it's a stronger case for giving an adverse inference instruction than in Sevilla. I understand your argument. I guess your time's gone. Am I over? I guess I am. Thank you. We'll give you a minute for rebuttal if you need it. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the district court in this case applied the correct legal standard when considering the surveillance video that was destroyed at Coburn Street. Unlike the district court in Sevilla, which essentially dismissed the idea of a jury instruction out of hand once it determined that there was no bad faith, the district court in this case analyzed the government's conduct and then weighed that conduct against the potential prejudice that would be suffered by the defendant in this case. Yeah, but in Sevilla we did something more. In Sevilla we said, yeah, you goofed, district court. You should have considered whether something was warranted. And then we went ahead and said, and we think the instruction was warranted under these circumstances and you should give it. Why isn't this that situation? Well, in this situation, unlike the case in Sevilla, the district court here did go through the various factors and balance the... But in Sevilla we did the balancing. I mean, the Court of Appeals did and said, judge, you made a legal error, you should have done a balancing. We've looked at the facts and we think on remand you should give this instruction. Why did... Let's assume that we look at the judge's balancing in this case. Why shouldn't we find that because the facts are close to Sevilla that the judge should have ended up with a different balance as abuse of discretion standard? Well, that would be my point, is that because the court in this case did do its own balancing, the review would be abuse of discretion. Okay, so why didn't the judge abuse his discretion when he didn't tell the jury, look, you should assume that what was on that tape would have been favorable to Mr. Blow. It seems aptly named in this case. Two reasons, Your Honor. First, on the government's conduct side, the court weighed two factors that were outlined in Loud Hawk. The first was the negligent sort of lack of bad faith and the second was the fact that the prosecutor in this case was not involved in the destruction or was not even on the scene at the time. He did find the government was negligent. Correct. And then on the other side he found what about prejudice? His focus, and this again is one of the factors outlined in Loud Hawk, was the centrality of the evidence to the government's case. Because it would have been only spec, even if you couldn't identify Mr. Blow as being at this other location on the day, it wouldn't go to the meat of the case. Correct. There's a break of approximately an hour between when that video surveillance would have captured the defendant or someone else and when this entirely different group of agents basically saw the transaction take place. Is there any contention that he walked from this point to the next point? Did they follow him from that point to the next point? No, Your Honor. The Koppen Street address was surveilled by an agent by the name of Andrew Flood who watched the defendant come out and get into a vehicle and leave. There's no evidence that he followed him or that there was any connection between that. So there's four points where the agents say they surveilled Mr. Blow during this time period, correct? There's the original one at Koppen Street. Then there's Officer Hernandez parked across the street who watches an individual get into a passenger seat of a van. Then there's Sergeant Cruz who follows the van. And the fourth one is this location a block away or several blocks away, right? The one we're talking about today. My question was, that's the only one with a surveillance video. Am I correct? Correct. The very first one. And so you've got eyewitnesses on 2, 3, and 4. On the first one, do you have an eyewitness and a surveillance video? Is that what happens? That's correct. Agent Flood had a surveillance ID and there was also videotape. And it's the video that you've lost of the first one? That's correct. And did the judge say, well, look, given everything else in this case, even if the video in the first one was mistaken, it wouldn't have affected the verdict? Essentially. And he also recognized that the United States offered to sanction itself and not to offer the ID from Agent Flood at that first location to essentially cut that entire... Did you not offer that? That's correct. Agent Flood was not called. So the evidence in the case was about 2, 3, and 4? Correct. It started with a call before the Cervantes. The second point, even if the district court in this case had applied the wrong legal standard or had abused its discretion in balancing the prejudice versus the government's conduct, this court should still affirm because any error would have been harmless in this case. The appellant focuses much of his brief, understandably, on the April transaction, but there was an entirely separate transaction. That's exactly how you could abuse your discretion if it was harmless. In other words, it wouldn't be an abuse of discretion under the circumstances? It's the same test, isn't it? Well, I guess that was going to be my question. I'm glad Judge Reinhardt asked it because that, again, affirms it just a little bit. I'm trying to decide if you use this test that's outlined in BIA, and we're really talking about an abuse of discretion in the factors you go through in making the test. How do you ever get to a harmless error review afterwards? It seems to me the harmless error comes in in the factors the court's supposed to look at. The court says it wouldn't have made any difference anyway, so I'm turning you down. But if he was wrong about that, I don't think we can then later find that an error was harmless. But can you go to the second transaction, to the other conviction? Your opponent didn't have a chance to argue that. The January one? Yes. Why is that 404B material here? Oh, sorry, you're talking about the 2007 conviction? Yes. And you can talk about the January too, but I'm particularly interested in the 404B issue. Your Honor, that, as the district court found in this case, that conviction was material to facts in this case. How? It went to show that the defendant had knowledge that there were drugs, crack cocaine, that he was selling, and it went to his intent to distribute those drugs. The court also analyzed the time between the earlier conviction, which was only three years before, and it analyzed the similarity between the 2007 conviction and the offenses that were charged here. And you wanted to talk about the January one, so please go to that one now. My only point, and then maybe this all gets subsumed into the harmless error analysis, is that there's no real argument, even if there's a colorful argument that Agent Flood's potential false identification at the Coben Street address would have affected the other agents later that day, there's no argument that Agent Flood's ID in April of 2010 would have affected the January controlled buy of crack cocaine that took place two months before with an almost entirely different group of agents. So he identified him then. In the January transaction, there were significant voice recordings. There was a number of agents who testified as to following the confidential source, in that case, to the buy location. There was testimony from the agent in charge of the confidential source who testified that he listened essentially in real time as the buy was going on at the Coben Street address. So what you're saying is that even if we found error, the conviction for the January transaction would remain. Right. In fact, the district court asked at the outset of the hearing, defense counsel, is there any argument as to how this destroyed evidence in April would have had any effect on the January transaction, and the defense counsel said there's no principled argument. And that would be our position as well, that there's simply no way to argue that this destruction would have affected the January transaction. And that transaction involved 46 grams of crack cocaine, which is well above the mandatory minimum amount in this case anyway. See, and I think they're connected in this sense. This is what you're going to argue. I thought you were going to say even if the 404B evidence was improperly admitted, this jury knew that he had sold crack cocaine in January and convicted him of it, and so it's unlikely that the introduction of the prior conviction would have had much effect in this case. But maybe I'm wrong. But let's go back. So walk through me again, because I think I'm not clear on this. Where was Mr. Blow arrested? He was not arrested on either of these occasions. Right. He was arrested on some later occasion. Was he arrested by the people who surveilled these transactions? I don't know that. The record doesn't show that. Not on the record, no, Your Honor. Okay. That's just a factual question I had. Okay. You're about out of time. Okay. Thank you, Your Honor. Thank you, counsel. We'll give you a minute for rebuttal. Thank you. I would encourage the court to look at the excerpt of record at 145 to 147. That is the surveillance report. It is titled April 16, 2010, Drug by Walk from Danny Blow. It is surveillance over the course of that morning purportedly of Mr. Blow. The second location is the Koban, 5151 Koban, not the first location. It makes clear that they believe that they're surveilling him all that day. It doesn't say that there are different agents in different places and he's showing up at one place and showing up at another place. It tracks him over that course of time. And, you know, I've tried a few cases. I could tell you if I were to say to a jury, look, they're saying they followed him all this morning. Here's a video of him at the second location. It's not him, so they got the wrong guy. That's a pretty compelling argument. I didn't have that. The trial lawyer didn't have that. What he instead should have gotten in this instance is an instruction from which he could argue to the jury, look, they've destroyed this evidence. You can draw an inference that they destroyed the evidence because it was helpful to Mr. Blow. If the jury draws that conclusion, that makes him think that this is an incompetent investigation, that there's something hinky, there's some bad faith going on here, and to think that that wouldn't bleed into the other count is just not the way jurors work. Did you argue that to the trial judge? Did you tell him that it bled into the other count? I was not trial count. I mean, you, I meant your side. I wasn't, but at that point, you know, he wasn't getting the instruction anyway, so he doesn't have that. He didn't ever make that argument. Excuse me? The argument you just made I did not read before. No, well, he didn't. I made that argument as far as it bleeding into my briefs, as far as it bleeding into the first count. The trial counsel did not. He never got the instruction. He never had a chance to really present that to the jury, and I think he probably didn't want to go out on a limb on that. He didn't talk to the judge in that way either. That's true. That's what I've seen. That's true. But, again, what the jury would conclude, if it finds that there's bad faith with respect to count one, it's obviously going to look somewhat askance at count two and whether or not these cooperators are telling the truth, that sort of thing. If I may just say one brief thing on the 4-4-B. The 4-4-B argument goes to both count one and two. Yeah, but I don't want to prolong this, but your defense was in part your client's defense, not yours. Yeah, on the tape, that's me, but I'm not talking about selling drugs. At least that's a defense made to the jury. I'm talking about selling a car. And the fact that he's been talking about selling drugs in the past to people would seem to be, you know, and they had evidence that these are code words for drugs, it seems to me his prior experience with selling drugs would be relevant as to motive and intent, would it not? But he didn't introduce any evidence with respect to that 2007 conviction other than that he had a conviction. Right, because his defense was, oh, I'm not talking about drugs here when I say, I don't know what the word is, I'm talking about a car. And they put on evidence that these are typical terms for drugs and they say, by the way, this is not a newcomer to drugs, this is this guy who sold them before. I think that probably goes to motive and intent, doesn't it? Well, knowledge and intent, the court's case law is clear that there has to be similarity between the prior conduct and the present conduct to draw that sort of inference. And here there was no evidence whatsoever as to the prior conduct, just that he had a conviction. There's no indication even if... It seems to be a funny argument. Most of the time when people were in front of me in the trial court, the fight was whether there would be evidence of the conviction. And we had a fight about that. But they certainly didn't want everybody to know about what happened in the conviction and why he was the relevant guy. That did not seem to be the argument made in the trial court. I don't know. I mean, my worry about this is that there are two objections I always saw in this kind of stuff when I'm determining whether the conviction comes in. One is, should the conviction come in at all, which we've got to look at the rules. Second is, should we let all the basis for that come in, which could be even worse than having the conviction in. Well, I think that that second question is usually in the 609 context. Well, I understand where you've got the context, but nonetheless, those are the questions you have in front of you. But if the facts actually showed in this case that he didn't on that previous occasion himself possess the cocaine, that he didn't know that it was cocaine, maybe it was driving a vehicle across the border or something like that, then you couldn't draw the inference because there isn't the similarity. We just don't know. I understand your argument. Thank you. Thank you, Counsel Case. This argument will be submitted.
judges: Reinhardt, Smith, Hurwitz